Move on to our last case of the day at this point, United States v. Butler, number 14-2270, and we'll hear from Mr. Stiller. I'm advised that the correct docket number for the last case is 14-2770 for the record. Mr. Stiller. May it please the Court. I would say good morning or good afternoon, but as I look and we're right at noon, I don't want to start with a misstatement. Good day, he goes. Pardon me? Good day covers the whole program. Good day. At sentencing, the district court described Renard Butler's case as one in which the guidelines got it right. The problem Mr. Butler complains about for the first time on appeal is that we all got the guidelines wrong. Primary responsibility for that rests at my feet. That's why the government is suggesting that the issue is waived while I'm conceding that it's forfeited, and really what I'm hopeful of doing is correcting my mistakes before the district court. On the issue of waiver versus forfeiture, this case occasioned my first cause to wade into that particular area of law. I came away with a couple of clear pronouncements. Waiver is an intentional abandonment or a purposeful relinquishment, whereas forfeiture is negligence and mistake. The other concept that became pretty clear is that in a criminal case, the distinction is to be constructed liberally in favor of the defendant. Beyond that, the government cites some cases that include some of our facts that seem to support waiver, but you can find just as many cases on generally similar facts where the waiver is forgiven and instead we proceed under Olano as a forfeiture. I don't see where in Mr. Butler's record there's any indication that he or his lawyer intentionally signed up for what we now assert to be a mistaken guideline construct. Clearly, something was overlooked. It was argued one way as a 3553A request for a variance when even using the proper language, we never cited the fact that the guidelines called for exactly the sort of relief we were arguing for. We just didn't do it the correct way. If I'm correct and if this court finds that the issue is forfeited rather than waived, we proceed under 52B and Olano, which first requires that I show an error that was plain or obvious. The facts here really aren't in dispute. The record makes clear within the confines of the federal indictment that in the latter part of 2012 and surely during January of 2013, Renard Butler was running around Milwaukee passing funny money in a variety of directions for a variety of purposes. What we know about his- Unusual in Milwaukee anyway. Pardon me? Unusual in Milwaukee, which is a law-abiding citizen. Especially now that, as Judge Hamilton points out, we all carry our guns legally. The crime rate went way down. Counsel, I have a question. Yes. The amount of money that was involved in the earlier state court actions, was that taken into account in the relevant conduct? It was not partly because I never stated it as so. The district court never viewed the subsequent Brown County action as part of the instant defense. It was really treated as two distinct criminal episodes. And how much money was involved in the earlier action? In the Brown County conduct? Yes. From the record, we do not know. The only thing we know about the Brown County case is the federal pre-sentence report's inclusion of the contents of the Brown County criminal complaint, which didn't put dollar signs on anything. So if, and we don't know, but if that amount of money that was involved in the Brown County action, if that had been determined to be relevant conduct, would that have then changed the guideline calculations in terms of, because of course it's all run on the amount of money involved, would that have changed it? The answer is no, unless the amount of money in the Brown County case took the aggregate amount of money from $4,500 or $4,800 to an amount over $30,000. And that's because 2B5.1 has that tricky little thing that says you start at a nine, you get some for the amount of money, you get plus two for evidence of manufacturing, and if all that doesn't take you to 15, go to 15. We were well under 15, and we had cushions, so to speak, so that so long as the total amount of money didn't exceed $30,000. Mr. Stiller, if I understand your argument, the theory is that this should actually be a mitigating factor here in the sentencing. But it seems to me that the argument is that Mr. Butler, even after the federal arrest, essentially continued without interruption from January of 2013 until the state arrest in August of 2013 to support himself by making phony currency. I can see how a district judge would easily see that as an aggravator, not a mitigator. Can I clarify the facts and then respond to the mitigation versus aggravation? Sure. On the record, it was way back in August of 2012 when Butler was the passenger in a Milwaukee vehicle that got stopped, and he was found with counterfeit currency. He was taken into custody but not charged and released, and then in Milwaukee in January, he's using the phony money to buy the job offer. Was he found with the phony money? Not to my knowledge. So regardless of Brown County, we know that that arrest back in August of 2012 didn't deter Mr. Butler. On the aggravation versus the mitigation judge, that really highlights the error of my ways. I argued the scenario as 3553A mitigation. I didn't need to do that, nor did it need to be mitigating because under the guidelines, whether it's aggravating or mitigating, if it's found to be part of the same course of conduct, then all the relief I was seeking was available by guideline construct, not by exercise of discretion. In terms of prejudice… Well, under your theory, somehow the judge would have to guesstimate a total amount of money, right? Because the theory is continuous counterfeiting. Yes, and that goes back to Judge Ellis' question. I think that would have just simply required greater inquiry into the court record and the law enforcement reports in connection with the Brown County matter. But also, isn't the assumption that he was, if these are all part of one continuous episode, then there was a lot of other counterfeiting between June and August of 2013? One would assume so, yes. Which I gather Mr. Butler has not yet admitted. Other than in the abstract in that statement given to the Green Bay Police, where he talked about during his several months in Green Bay, he was using it to buy his marijuana. He was facilitating it being printed and given to Steve, who would bring it down to Milwaukee. At times, Mr. Butler would return from Green Bay to Milwaukee for this particular unlawful purpose. Returning to Olano. This story is supposed to make the judge lighten the sentence. No. By describing more criminal conduct. No. Had it been properly presented, it would have called upon the judicial officer to properly apply the guidelines. And that's part of the prejudice that falls under the substantial harm prong of Olano. For a sentence to be substantively reasonable, it has to be imposed in procedurally reasonable fashion. To be procedurally reasonable, it has to start with a correct guideline construct. We missed that. As a result, the guidelines were higher. In its brief, the government likes to talk about this, was only six months and the ranges were adjacent to each other, so what's the harm? I go back to this morning's first argument, where counsel was talking about something far more dramatic. I think the guideline bump took something from 188 to 262. Going from 18 to 24 months at the low end is a 25% increase. I haven't done the math. I'm guessing 188 to 262 is a lot greater in the number of months, but that's probably something like 27%. It changed the government's obligations under the plea agreement so that it was allowed to request a sentence of 24 when it otherwise would have only been able to ask for a sentence of 18 months. And then the fourth form of prejudice is that it tainted the court's consideration of my 5K 2.23 argument, which is also before this court. I see I'm into my rebuttal time. Thank you very much, Mr. Stiller. Mr. Proctor. Good day, your honors. May it please the court, Benjamin Proctor, appealing for the United States. The defense argues at the outset that, I understand he's conceding that it was his mistake, but I also want to note that the defense made a very coherent and, I would say, very good argument at sentencing. It just based its argument with respect to the Brown County conviction on the 3553A factors. How that conviction was going to impact in any way the sentence in this case was considered by the district court. It was agreed to by the United States at sentencing. The United States agreed that that should be considered by the court in reaching the proper sentence in this case. But it was not presented as a guidelines challenge. For that reason, it was waived. Now, if we look to some of the cases of this court, Staples, Garcia, Brody, Redding, we'll look at what, I understand that the waiver principles need to be liberally construed in favor of the defendant. And with that, we need to look at what right was he giving up, was he waiving at that point. Did he know he could object to the guidelines calculation? Was he provided the opportunity to object to the guidelines calculation? Yes, he was. The pre-sentence report was released to the parties in advance on July 10th. There was actually an objection. The government noted to the pre-sentence writer that there was a mistake in the calculation of the total offense level, and that is in the PSR that was submitted to the court on July 25th. There's a bolded provision in there indicating that it was corrected. And did defense counsel know of the potential issue of this Brown County conviction as included in criminal history? That is apparent by the sentencing memo, which addresses it and makes it one of the focal points in the defense favor of a 30-day sentence, which was ultimately the defense recommendation based on the number of factors that it set forth. And did the defense counsel affirmatively agree that the guidelines calculation was correct? Yes. In the sentencing memo, he states that the guidelines are correct. Therefore, going into sentencing, the defense knew what it was arguing, the government knew what the defense was arguing, and the district court considered those arguments. Under the case law I just cited, that is enough to constitute waiving. Assuming the matter is not waived, we look at forfeiture. And here I submit that in the first two prongs of a plain error review, we have to determine if there is an error and if it's plain. Is there an error? I argue it's debatable. I argue there isn't an error necessarily, but whether it's plain, that is debatable. Guideline provision 1B.1.3, which is ultimately what we're dealing with here when we deal with relevant conduct, through the cross-reference under 4A.1.2, note 1, where we get to what is relevant conduct to the prior conviction. It's not unlimited. There are terms in there that indicate what we have to look at to determine if something is relevant conduct. Is it distinct? I'm sorry, is it similar? In terms of similarity, we'll look at victims, we'll look at means, we'll look at geography, we'll look at timing. Here we have various distinctions between Green Bay conduct and the Milwaukee conduct. Is it an absolute cut-and-dry case? Not necessarily, but it is debatable. Under plain error review, a debatable or fact-based type of determination like this, that is not a plain error. I'll also note defense counsel mentioned that he couldn't think of a reason why he would have neglected raising this issue. I take defense counsel at his word. I also note that the argument presented, and this gets back to the waiver point a little bit, the argument presented by defense counsel was that the guidelines were over-representative in this case. The total offense level was over-representative of the offense conduct because of the five-point bump that comes along with manufacturing. That ties into another argument that the criminal history category is over-representative because of, among other things, a couple of the citations for driving, several traffic violations, and in addition to this Brown County conviction. If we look at the alternative argument, a direct challenge to the guidelines, that changes this argument a little bit. It makes the Brown County conduct front and center to what the district court has to consider in determining the nature and circumstances of this particular offense. That would have turned into a potential guidelines dispute. It would have called on the judge to rule on that objection potentially, but it brings it front and center in a way that it wasn't. We're looking at six months of apparent conduct. Again, as Judge Hamilton mentioned, this is not necessarily a mitigating factor in the overall sentencing recommendation advocated by the defense. With that, I submit that there is a reason why one would go with the 3553A argument as opposed to a direct guidelines challenge. Absent any additional questions from the court, I will submit back the rest of my time. Thank you, Mr. Stiller. Thank you, Mr. Proctor. Rebuttal, Mr. Stiller. I apologize. Unless the court has any questions, I'll waive. Hearing none, thank you all very much. The case is taken under advisement. Thanks to both counsel. Court will stand in recess until 930 tomorrow morning.